## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

WAYNE E. MURPHY,        )
                                )
              Plaintiff,   )
                                )
v.                               )    Case No. CIV-07-1154-M
                                )
MICHAEL J. ASTRUE,      )
COMMISSIONER OF THE SOCIAL  )
SECURITY ADMINISTRATION,   )
                                )
             Defendant.  )

## REPORT AND RECOMMENDATION

Plaintiff, Mr. Wayne E. Murphy, seeks judicial review of the Social Security Administration's denial of disability insurance benefits. This matter has been referred for proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). It is recommended that the Commissioner's decision be affirmed.

## I.    Procedural Background

Mr. Murphy initially filed an application for disability insurance benefits in 1997. The Agency denied benefits on May 29, 1998, and Mr. Murphy did not appeal the unfavorable decision.

Mr. Murphy filed another application for disability insurance benefits on October 5, 2001, alleging an inability to work since June 18, 1995.[1]  *See* Administrative Record [Doc. #10] (AR) at 50-52.  Mr. Murphy's application was denied initially and on reconsideration.

---

[1]Because Mr. Murphy had previously applied for and been denied benefits in a decision that became final on May 29, 1998, the relevant period in this action is May 30, 1998, through December 31, 2000, the date Mr. Murphy was last insured. *See* AR 402.

Following a hearing, an Administrative Law Judge (ALJ) found that Mr. Murphy was not disabled. AR 6-13. The Appeals Council denied Mr. Murphy's request for review. AR 3-5. Mr. Murphy appealed the Commissioner's decision to this Court which reversed and remanded the Commissioner's decision on July 21, 2005. AR 423.

On remand, a supplemental hearing was held, AR 606-651, and the ALJ issued another unfavorable decision on June 15, 2007, concluding that Mr. Murphy was not under a disability as defined in the Social Security Act from May 30, 1998, through December 31, 2000, the date last insured. AR 399-408. This appeal followed.

## II.   The ALJ's Decision

The ALJ applied the sequential evaluation process required by agency regulations. *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520. He first determined that Mr. Murphy had not engaged in substantial gainful activity during the relevant period from May 30, 1998, through his date last insured of December 31, 2000. AR 404. At step two, the ALJ determined that Mr. Murphy suffers from a severe impairment: disorder of the spine. AR 404. At step three, the ALJ found that Mr. Murphy's severe impairment did not meet or equal the criteria of any listed impairment described in the regulations during the relevant period. AR 406. At step four, the ALJ determined Mr. Murphy's residual functional capacity (RFC):

> [F]rom May 30, 1998, and through the date last insured, the claimant had the residual functional capacity to occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; walk/stand 6 hours in an 8 hour work day; sit 6 hours in an 8 hour work day; occasionally climb, balance, stoop, kneel, crouch, and crawl. The claimant has additional nonexertional limitations resulting in mild

2

restrictions of activities of daily living; mild restrictions in social functioning; and mild deficiencies of concentration, persistence, or pace.

AR 406.   Based on the testimony of a vocational expert (VE), the ALJ determined that through the date last insured Mr. Murphy had the residual functional capacity to perform his past relevant work as store clerk, file clerk I, cosmetologist, and quality control inspector. AR 408.

## III.   **Standard of Review**

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied.  *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted).   A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it.  *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004).   The court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, but the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner.   *Hackett*, 395 F.3d at 1172 (quotations and citations omitted).

**IV.     Issues Raised on Appeal**

Mr. Murphy asserts three propositions of error:  (1) that the ALJ failed to properly evaluate the medical opinion of a treating source; (2) that Mr. Murphy does not have the RFC to perform his past relevant work or substantial gainful activity; and (3) that the ALJ erred in failing to properly consider the disability rating of the Department of Veterans Affairs (VA).

**V.      Analysis**

**A.      The ALJ's Analysis of a Treating Source Opinion**

Mr. Murphy challenges the ALJ's analysis of a report provided by Dr. Connie Teresi on October 22, 1997.  AR 116-118.  This report reflects Dr. Teresi's opinion that Mr. Murphy is unable to return to his past relevant work or to perform other full-time work because of his limitations.  Dr. Teresi's report included findings that Mr. Murphy could sit only two hours in an eight-hour workday and could stand or walk only one hour,  and that he could lift five pounds frequently and five to ten pounds occasionally.  AR 117.

In the ALJ's prior unfavorable decision dated January 29, 2004, AR 6-13, the ALJ did not even mention Dr. Teresi's report.  On appeal to this Court, United States Magistrate Judge Robert E. Bacharach recommended that the case be reversed and remanded to the Commissioner for reconsideration in light of Dr. Teresi's opinion.  AR 410-419.  The Report and Recommendation of Judge Bacharach was adopted and judgment entered.  AR 421-423. On remand, the Court directed the ALJ "to consider and explain the significance, if any," of Dr. Teresi's 1997 report.  AR 422.

Mr. Murphy now contends that the ALJ's analysis of Dr. Teresi's report on remand is deficient under the "treating physician rule." The Commissioner argues that Dr. Teresi's opinion should not be considered as that of a "treating physician" and that the ALJ's consideration of Dr. Teresi's opinion comports with the legal standards for evaluating medical opinions.

Under the "treating physician rule," greater weight is generally given to the opinions of sources of information who have treated the claimant than of those who have not. *See Hackett*, 395 F.3d at 1173-1174 (*citing Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004)). First, the ALJ must determine whether the opinion of a treating source should be given controlling weight. *Id.* at 1174. Using a sequential analysis, an ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques;" and (2) "consistent with other substantial evidence in the record." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quotation omitted). If an opinion fails to satisfy either of these conditions, it "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Id.* (*quoting* SSR 96-2p, 1996 WL 374188, at *4). Non-controlling opinions "'are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527[.].'" *Id.* Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence;

(4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at 1301 (quotation omitted). If the ALJ chooses to reject a treating physician's opinion entirely, he must set forth specific legitimate reasons for doing so. *See Langley v. Barnhart*, 373 F.3d at 1119.

A physician's opinion  is entitled to special weight as that of a treating physician "when [the physician] has seen the claimant 'a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment,' taking into consideration 'the treatment the source has provided' and 'the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories.'" *Doyal v. Barnhart*, 331 F.3d at 762 (*citing* 20 C.F.R. § 416.927(d)(2)(i), (ii)).

Mr. Murphy makes no argument regarding Dr. Teresi's status as treating source but merely assumes her report must be considered a treating source opinion. The Commissioner points out, however, that Dr. Teresi's opinion was drawn "from her first, and possibly only, visit with Plaintiff." Commissioner's Brief at 5. Indeed, the record reflects that the date of Dr. Teresi's report is the date of her first examination of Mr. Murphy. Dr. Teresi stated in her report that "Mr. Murphy has been my patient since 10/22/97 with the most recent examination on 10/22/97." AR 116. *See also* AR 173. Therefore, Dr. Teresi had not treated

6

Mr. Murphy prior to the date of her report on October 22, 1997.[2]  It is doubtful that a single examination could create the "longitudinal" picture that justifies the deference given to a treating source opinion.

Even assuming that Dr. Teresi's October 1997 opinion should be given the deference owed to a treating source opinion, however, the Commissioner contends that the ALJ's consideration of Dr. Teresi's opinion comports with the governing rules.  The ALJ engaged in an extended discussion of Dr. Teresi's report, stating first:

> The claimant reportedly became a patient of C. Teresi, M.D., in October 1997 when she concluded the claimant could not perform his work as a store clerk or other work due to limited mobility and limited ability to sit or stand for long periods of time (Exhibit B3F, page 31).  This is a rather peculiar conclusion given the findings from physical exam which showed CN intact, S/S intact, and reflexes 5/5 and symmetric (Exhibit B3F, page 30).  Dr. Teresi's opinion expressed in October 1997 is not substantiated by the evidence of record, including her own findings from physical exam, and is inconsistent with the remainder of the evidence.

AR 405.  The ALJ compared Dr. Teresi's report particularly to the physical examination and opinion of Dr. John B. Runnels just months earlier.  Dr. Runnels, a staff neurosurgeon at the VA, examined Mr. Murphy and established a treatment plan for him in June 1997.  AR 177.  As described by the ALJ, Dr. Runnels noted that the MRI of Mr. Murphy's cervical spine showed mild protrusion at C5-6 and C6-7, and the examination revealed no focal weakness.  The ALJ recited detailed findings from Dr. Runnels' examination and noted Dr. Runnels'

---

[2]Six months after her October 1997 report, Dr. Teresi again saw Mr. Murphy at the VA clinic on May 21, 1998.  The record reflects that at that time Mr. Murphy's back pain was being controlled by medications.  AR 166.

conclusion that neurosurgical intervention was not indicated at the time he examined Mr. Murphy.

The ALJ also stated that Dr. Teresi's opinion "is further eroded by subsequent examinations of this claimant by other practitioners."  AR 405.  The ALJ cited to six such reports of examinations, from May 1998 through September 2001, citing specific findings from the subsequent examinations, MRIs and X-rays inconsistent with Dr. Teresi's opinion.

Finally, the ALJ concluded that Dr. Teresi's opinion is "not persuasive," finding that it is "inconsistent with the bulk of the evidence of record from other practitioners" and "clearly inconsistent with her own findings" which did not substantiate her ultimate conclusions.  AR 406.  The ALJ, therefore, did not afford Dr. Teresi's opinion controlling weight and in fact rejected Dr. Teresi's opinion.  He did so, however, based on a thorough discussion of the medical evidence before, during and after the relevant period, including the opinions and findings of Mr. Murphy's many other treating sources, and he gave specific legitimate reasons for rejecting Dr. Teresi's opinion.  His discussion reflects consideration of factors pertinent to determining the appropriate weight to give the opinion.  The ALJ's consideration of the opinion, therefore, does not create grounds for reversal of the Commissioner's decision.

### B.    The RFC Determination and Mr. Murphy's Past Relevant Work

The presentation of Mr. Murphy's second proposition makes it difficult to discern the exact basis of his claim of error.  Mr. Murphy simply asserts: "Murphy does not have the

RFC to perform PRW or SGA." Plaintiff's Brief at 6. This statement of the proposition of error is followed by a recitation of various legal standards with very minimal citation to or analysis of the administrative record. Mr. Murphy's failure to specify the factual basis of his arguments or tie his various general assertions to the administrative record places the Commissioner – and this Court – in the position of having to guess the exact basis of his claim. Mr. Murphy's failure to develop the factual basis of his argument is itself grounds for rejecting the claim. *See Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (holding appellate argument insufficiently developed; declining to speculate on what evidence appellant claimed was ignored); *Perry v. Woodward*, 199 F.3d 1126, 1141 n. 13 (10th Cir. 1999) (stating appellate court "will not craft a party's arguments for him"); *Effinger v. Callahan*, No. 97-7001, 1997 WL 446724 at *2 (10th Cir. Aug. 6, 1997) (unpublished op.) (court will not comb through the record where counsel has not provided specific references tied to an argument) (*citing SEC v. Thomas*, 965 F.2d 825, 827 (10th Cir. 1992)).[3] The following analysis, nevertheless, attempts to address Mr. Murphy's general arguments regarding the ALJ's step four determination.

With one exception, the ALJ adopted the RFC determinations of the State agency consultants, finding that Mr. Murphy could have performed a limited range of light work

---

[3]The Court notes with further dismay that the "Summation" section of Mr. Murphy's brief contains references to opinions of "Dr. Ma," "Ms. Welch" and "Ms. Monroe" – individuals not referenced anywhere else in the brief, nor in the administrative record to the extent the Court has been able to discern. These references relate perhaps to another case. Their inclusion in Mr. Murphy's brief, together with the lack of cogent development of arguments tied to the record of this case, suggests a serious lack of care in preparing and submitting arguments to this Court.

during the period under consideration.[4]  In determining Mr. Murphy's functional limitations, the State agency consultants specifically acknowledged Mr. Murphy's history of T-8 compression fracture, his complaints of chronic back and neck pain, and his reduced range of motion.  AR 244.  The ALJ concluded that "from May 30, 1998, and through the last date insured, the claimant had the residual functional capacity to occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; walk/stand 6 hours in an 8 hour work day; sit 6 hours in an 8 hour work day[.]" He also concluded that Mr. Murphy has additional nonexertional limitations resulting in mild restrictions of activities of daily living, social functioning and concentration, persistence and pace.  AR 406.  The ALJ then relied on the testimony of a vocational expert to conclude that during the period under consideration Mr. Murphy had the RFC to perform his past relevant work as store clerk, file clerk I, cosmetologist, and quality control inspector.  AR 406.

Mr. Murphy argues that the ALJ erred at step four because he did not make specific findings regarding the demands of Mr. Murphy's past relevant work and improperly relied on the VE's testimony for his conclusion that Mr. Murphy's impairments do not preclude the performance of his past relevant work.  The VE, however, testified about the skill level and exertional requirements of Plaintiff's past relevant work.  AR 644-45.  Further, the ALJ posed a hypothetical question to the VE incorporating both the exertional and non-exertional limitations of a person with Mr. Murphy's RFC.  AR 645-46.  It is not error for an ALJ to

---

[4]"The most notable difference is the conclusion by the undersigned that the claimant can climb, balance, kneel, and crawl only occasionally whereas the State agency consultants concluded the claimant could frequently do so."  AR 408.

rely on the testimony of the VE in these areas. *See Doyal v. Barnhart*, 331 F.3d at 761 ("An

'ALJ may rely on information supplied by the VE at step four.'") (*quoting Winfrey v. Chater*,

92 F.3d 1017, 1025 (10th Cir. 1996)).

In a related argument, Mr. Murphy contends that the ALJ's hypothetical question to

the VE failed to incorporate any limits associated with Mr. Murphy's pain.   The

administrative record contradicts that argument.   The ALJ's hypothetical question --

incorporating exertional and nonexertional restrictions -- was based on the findings of the

state agency consultants, who expressly considered Mr. Murphy's chronic back and neck

pain. *See* AR 244.

Mr. Murphy also argues that the ALJ did not specify the evidence supporting his

credibility determination relating to Mr. Murphy's complaints of disabling pain.   This

argument, too, is without merit.   The ALJ correctly set out the legal standards and factors

applicable to the credibility determination and then summarized Mr. Murphy's testimony

regarding his back pain as well as his report of experiencing sleepiness as a side-effect of his

medication.   The ALJ, however, noted that the medical records do not document the side

effects of Mr. Murphy's medication.   He further finds that the medical records do not

substantiate the extent of Mr. Murphy's complaints.   Mr. Murphy points to no medical

evidence in the record that contradicts the ALJ's findings.   Perhaps Mr. Murphy is relying

on Dr. Teresi's 1997 report, but as earlier discussed the ALJ rejected Dr. Teresi's opinion

and gave specific legitimate reasons for doing so.

Mr. Murphy argues that the ALJ failed to identify the evidence he relied upon in making his RFC determination. This argument, again, lacks any factual underpinning and is flatly contradicted by the ALJ's discussion of the state agency consultants' RFC findings upon which he relied. AR 407-408. Mr. Murphy further contends that the ALJ failed to explain how he considered evidence inconsistent with his assessment. He does not identify the "inconsistent" evidence. Assuming, however, that Mr. Murphy is again relying on Dr. Teresi's opinion, the ALJ provided a thorough analysis of why he was rejecting it.

Finally, Mr. Murphy argues the ALJ erred by not taking into consideration that Mr. Murphy has mental impairments which impede his ability to perform his past relevant work. Mr. Murphy does not, however, identify the mental impairments that were allegedly ignored nor explain why they would have prevented Mr. Murphy from doing his past relevant work during the applicable time period. Mr. Murphy references only the VE's answer to a hypothetical question posed by Mr. Murphy's representative. The VE testified that a person with Mr. Murphy's impairments who was further limited to performing "only simple, non-complex, non-detailed type of work" because of "problems with medication, side effects and pain, and . . . anxiety and depression" could not perform Mr. Murphy's past relevant work. AR 646. Mr. Murphy fails to identify evidence of problems with medications or depression that would prevent him from performing his past relevant work. The ALJ did find that Mr. Murphy had symptoms of an anxiety-related disorder. The ALJ found, additionally, that Mr. Murphy's anxiety caused mild restrictions to activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence

or pace. These nonexertional limitations are incorporated in the RFC determination. Further, the ALJ noted that the record is devoid of evidence relating to repeated episodes of decompensation of extended duration. AR 405. The ALJ's mental RFC findings are supported by substantial evidence, and the ALJ was not required to accept the VE's answer to a hypothetical question which assumed limitations not supported by the record.

In sum, the ALJ's determination of Mr. Murphy's RFC and his finding that Mr. Murphy could have performed some of his past relevant work within the applicable time period is supported by substantial evidence. Mr. Murphy has failed to identify any error in the ALJ's analysis.

## C. **Consideration of the VA's Disability Rating at Step Four**

The administrative record reflects that Mr. Murphy received a disability rating and pension from the VA. The VA specifically found that Mr. Murphy "is unable to secure and follow a substantially gainful occupation due to disability." AR 527. Mr. Murphy contends that the ALJ erred in failing to properly consider this evidence. He further states, without further explanation, that the ALJ should have afforded "substantial weight" to the disability rating.

The Tenth Circuit Court of Appeals has held that a determination of disability by the VA, while not binding on the Commissioner, is nevertheless "evidence that the ALJ must consider and explain why he did not find it persuasive." *Grogan v. Barnhart*, 399 F.3d 1257, 1262-1263 (10th Cir. 2005) (citing *Baca v. Department of Health & Human Services*, 5 F.3d 476, 480 (10th Cir. 1993)).

Here, however, the ALJ specifically acknowledged and discussed the VA rating:

> The Social Security Administration is not bound by determinations of disability or partial disability rendered by any other government agency. Yet, the undersigned notes the Department of Veterans Affairs concluded the claimant was unable to secure and follow a substantially gainful occupation due to disability (Exhibit B13F). The standards for such determination by the Department of Veterans Affairs are not necessarily identical to those set forth in 20 CFR 404.1520. As noted herein, the standards of evaluation for purposes of disability determination by the Social Security Administration are contained at 20 CFR 404.1520.

AR 405.

After noting the existence of different standards, the ALJ then discussed the medical evidence, reports and examination conducted primarily by Mr. Murphy's physicians at the VA, including the report of Dr. Teresi who opined as to Mr. Murphy's ultimate disability. He carefully explained why he rejected Dr. Teresi's opinion. Relying further on the testimony of a VE, the ALJ concluded that Mr. Murphy was not disabled under the Social Security Act. While the ALJ might have gone farther to specifically discuss the distinctions between the VA rating standards and those of the Social Security Administration, Mr. Murphy points to no law or regulation requiring the ALJ to do so. The ALJ did, in fact, expressly acknowledge and consider the VA rating, and his emphasis on the differing standards and his analysis of the medical records from the VA explain why he did not find it persuasive. The ALJ did not commit legal error in his consideration of the VE disability rating.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636.  Any such objections must be filed with the Clerk of the District Court by September __29th__, 2008.  *See* LCvR72.1.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __9th__ day of September, 2008.


VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE